1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  EDITH SALINAS,                          ) Case No.: 1:17-cv-0419 - JLT
                                            )
12              Plaintiff,                   ) ORDER GRANTING IN PART PLAINTIFF'S
                                            ) MOTION FOR ATTORNEY FEES AND COSTS
13       v.                                  )
                                            ) (Doc. 55)
14  FCA US LLC, et al.,                      )
                                            )
15              Defendants.                  )
                                            )
16  _____)

17         Edith Salinas asserts that FCA US LLC is liable for violations of the Song-Belberly act and

18  fraudulent inducement under California law. The parties settled the underlying claims, and Plaintiff

19  now seeks an award of attorney fees and costs.  (Doc. 55)  For the reasons set forth below, Plaintiff's

20  motion is **GRANTED** in part, in the modified amount of $28,743.93.

21  **I.     Background**

22         Plaintiff purchased a 2013 Jeep Grand Cherokee on October 14, 2012.  (Doc. 1-1 at 7, ¶ 8)

23  According to Plaintiff, the vehicle "was delivered to [her] with serious defects and nonconformities to

24  warranty[,] and developed other serious defects and nonconformities to warrant including, but not

25  limited to a defective [Totally Integrated Power Module]." (*Id.* at 27, ¶ 130)

26         Plaintiff reports her vehicle "was factory-equipped" by Defendant with the Totally Integrated

27  Power Module ("TIPM"), which "is the chief component in the … power distribution systems and

28  consists of a computer, relays, fuses, and controls."  (Doc. 1-1 at 7, ¶¶ 10-11)  According to Plaintiff,

"The TIPM provides the primary means of voltage distribution and protection for the entire vehicle..." (*Id.*, ¶ 11)  Electrical systems receiving power from the TIPM included the vehicle's "safety systems, security system, ignition system, fuel system, electrical powertrain, and … comfort and convenience systems."  (*Id.*, ¶ 12)

Plaintiff contends the TIPM installed in her vehicle was faulty and failed "to reliably control and distribute power to various vehicle electrical systems and component parts," which caused her "check engine line [to] come[] on frequently."  (Doc. 1-1 at 7, ¶¶ 13-14)  In addition, Plaintiff alleges the TIPM "is likely to cause a variety of electrical issues such as a loss of headlight function, and unexpected distractions, such as the vehicle's horn or alarm sounding while on a roadway, which may increase the risk of injury for the driver, passengers, or others on the roadway."  (*Id.* at 7-8, ¶ 15)

According to Plaintiff, "FCA US LLC had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discovered by Plaintiff before [she] purchased or leased the Vehicle."  (Doc. 1-1 at 8, ¶ 17)  Plaintiff reports: "FCA US LLC vehicles have been plagued with severe TIPM problems for the last decade.  As a result, FCA US LLC has initiated multiple TIPM-related recalls to address safety or emissions concerns."  (*Id.*, ¶ 19)  Further, Plaintiff asserts the TIPM "defect is so widespread that… replacement parts have often been on national backorder, with drivers reporting from 2011 to 2014 that they had to wait weeks or months of have their TIPMs replaced."  (*Id.* at 8-9, ¶ 21)  She alleges FCA UC LLC dealers and auto-technicians "advis[ed] many drivers to not drive their vehicles until the TIPM [was] replaced, due to safety risks."  (*Id.* at 9, ¶ 21)  However, Defendant did not disclose the defect "to Plaintiff prior to the purchase of the Subject Vehicle or at any point during [her] ownership of the Subject Vehicle."  (*Id.* at 19, ¶ 89)

In October 2015, "Plaintiff received a letter in the mail from the settlement administrator in a class action lawsuit informing Plaintiff that [she] was a member of a class of individuals for which a 'class action settlement involving the Totally Integrated Power Module (TIPM)' had been reached."  (Doc. 1-1 at 22, ¶ 106)  The letter informed her that the plaintiff in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK (C.D. Cal) claimed the TIPM "installed in model-years 2011, 2012, and 2013 Dodge Durango and Jeep Grand Cherokee vehicles is defective and poses a

safety hazard." (*Id.*, ¶¶ 106, 111)  Plaintiff contends "[t]his was the earliest date that FCA US LLC made any attempt to notify [her] of any of the known defects in the TIPM7." (*Id.*, ¶ 106)  Plaintiff "opted out of the class action settlement in *Velasco* and filed the instant action to pursue [her] individual rights." (*Id.* at 26, ¶ 125)

On June 1, 2016, Plaintiff filed her complaint in Merced County Superior Court, Case Number 16CV-01595. (*See* Doc. 1-1 at 3, 5)  Plaintiff identified the following causes of action in her complaint: (1) breach of an express warranty pursuant to the Song-Beverly Act, (2) breach of an implied warranty pursuant to the Song-Beverly Act, and (3) fraudulent inducement. (*Id.* at 5, 26-31)  Plaintiff's prayer for relief included, but was not limited to: general, special and actual damages; "recession of the purchase contract and restitution of all monies expended;" diminution in value; civil penalties totaling two times her actual damages, and reasonable attorney fees and costs. (*See id.* at 31-32)  Defendant filed its answer on July 7, 2016, asserting in part that "Plaintiff's entire Complaint [was] moot based upon the fact that FCA US LLC … offered to repurchase Plaintiff's vehicle" as a repurchase under the Song-Beverly Act. (Doc. 1-4 at 8, ¶27)

On March 22, 2017, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), thereby initiating the matter with this court. (Doc. 1)  Plaintiff filed a motion to remand the action to the state court on June 5, 2017. (Doc. 5)  The Court determined it had diversity jurisdiction over the action and denied the motion to remand on August 30, 2017. (Doc. 17)

On July 15, 2019, Defendant filed a Notice of Plaintiff's Acceptance of its Rule 68 offer to settle the action for $120,000. (Doc. 49; Doc. 49-1 at 2-4)  At that time, Defendant also informed the court there "may still be a motion for attorneys' fees to be filed by Plaintiff." (Doc. 49 at 1)  Pursuant to the information provided, the Court entered judgment in favor of Plaintiff on July 16, 2019. (Docs. 52, 53)

Plaintiff filed a bill of costs on July 30, 2019. (Doc. 54)  In addition, she filed the motion for attorney fees, costs and expenses on August 2, 2019. (Doc. 55)  Defendant filed its objections to the bill of costs on August 6, 2019 (Doc. 57), and its opposition to the motion for fees on August 26, 2019 (Doc. 58)  Plaintiff filed a brief in reply on August 30, 2019. (Doc. 59)

*///*

## II.      Legal Standard

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)).  However, a statute allocating fees to a prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)).  Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."  Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994).  The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.*  If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.*  "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same).

4

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc*., 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp*., 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

### III.     Evidentiary Objections

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs. (Doc. 58-1; Doc. 59-3) The Court has read and considered each objection made by Defendant and Plaintiff, and to the extent the Court considers any evidence to which there was an objection in its analysis, the objection is overruled.

### IV.     Discussion and Analysis

As a prevailing buyer, Plaintiff is entitled to an award of fees and costs under the Song-Bervely Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal.App.5th at 470. Plaintiff seeks: (1) an award of attorneys' fees pursuant to the Song-Bervely Act in the amount of $45,660.00; (2) a lodestar multiplier of 0.5, in the amount of $22,830.00; and (3) actual costs and expenses of $11,760.31. (Doc. 55-1 at 6-7; Doc. 54 at 1) Thus, Plaintiff seeks a total award of $80,250.31. (*Id.*)

Defendant acknowledges that "Plaintiff is entitled to recover attorney's fees, costs, and expenses ... as the prevailing party," but argues the amount requested is unreasonable. (*See* Doc. 58 at 6) Defendant "proposes that any fee award to Plaintiff should be reduced at a minimum by: (a) a reduction in hourly rates across the board to reflect rates more reasonable in the community where the case was pending based on a ruling already made by this Court in a case between these same lawyers, (b) a reduction in fees incurred for duplicative billing, unnecessary "review," purely clerical tasks, and unsupported or anticipated time, and ( c) a minimum of 20% of the remaining fees of Hackler, Daghighian, Martino & Novak ... for excessive billing inherent in that firm's practice of billing in quarter hour increments." (*Id.* at 6-7)

#### A.     Fee Request

Plaintiff seeks $33,792.50 for the work completed by Knight Law Group and $11,867.50 for

work completed by Hackler Daghighian Martino & Novak, P.C., which "associated into the case as lead trial counsel to prepare the case for trial."  (Doc. 55-1 at 9, 11)

### 1.    Hours worked by counsel

A fee applicant must provide time records documenting the tasks completed and the amount of time spent.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)).  Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended."  *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008).  The court must exclude "duplicative or excessive" time from its fee award.  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or duplicative efforts [are] not subject to compensation").

Defendant objects to the hours reported by Plaintiff's counsel, asserting "Plaintiff fails to offer any explanation ... for why it took two firms who claim to be experts in their field to handle this simple case."  (Doc. 59 at 9-10)  According to Defendant, "[t]here is inherent duplication of effort in a staffing strategy that involves 13 lawyers," and the invoices include "numerous instances of inappropriate hours billed by senior lawyers like Mr. Mikhov to review basic notices and pleadings or to draft them, duplicative billing, unsubstantiated billing, and lawyers and a paralegal billing for purely clerical time that should be excluded from the lodestar calculation."  (*Id.* at 10)

### a.    Work completed by Knight Law Group

The billing records submitted by Knight Law Group indicate the attorneys expended 93.8 hours on this action, through the preparation of the motion for fees and costs.  (*See* Doc. 55-2 at 18-26)  Defendant objects to the hours reported by Knight Law Group and contends "most of the work was formulaic."  (Doc. 58 at 9)  According to Defendant, "The invoice attached to the declaration of Steve Mikhov… contains multiple instances of him reviewing pleadings and discovery already drafted and reviewed by other lawyers, discovery responses received from Defendant, expert designations, and

notices of depositions." (*Id.*)

### i. Initial case communications

Defendant objects to the first three entries in the billing records, for "[i]nitial communication with client and evaluation of client's claims," analyzing the vehicle documentation, and communication with Plaintiff" by Mr. Mikhov, who reported a total of 1.8 hours for these tasks. (Doc. 55-2 at 18) Defendants contend that because "no dates are identified for that time..., there is no evidence that the time was spent on this particular case." (Doc. 58 at 11) According to Defendant, "The same three entries appear without dates on virtually every invoice KLG submits in support of a fee motion in a lemon law case." (*Id.*, citing Doc. 58-2 at 3, Shephardson Decl. ¶ 9)

Plaintiff argues the entries were proper because "[i]nitial communication with a client is a customary practice prior to retention of a case." (Doc. 59 at 11) She also asserts that "[d]efendants routinely attempt to use any dates of communication with counsel as determinative of the merits of their Song-Beverly claim, which is improper." (*Id.*)

Significantly, the challenged entries are the only entries related to the initial contact with Plaintiff and review of her documentation. (*See* Doc. 55-2 at 18) Presumably, such contact and review had to occur or there would be no case. The mere fact that Knight Law Group regularly includes these entries in their billing records does not rebut the presumption that counsel did, in fact, communicate with Plaintiff and review her vehicle documentation. Because counsel clearly identified the tasks performed and the time to do so was reasonable, the Court declines to reduce the fee award based upon the failure to identify the date the tasks were performed.

### ii. Review of documents by Mr. Mikhov

Defendant objects to entries from Mr. Mikhov related to the review of "answers, notices, correspondence, and pleadings for which he had no other involvement." (Doc. 58 at 10) In particular, Defendant asserts he should not receive fees for the entries dated July 8, 2016; August 1, 2016; May 18, 2017; and March 5, 2018. (*Id.*) These entries indicate Mr. Mikhov reviewed the following documents: FCA's Answer to the complaint, Dodge's Answer to the Complaint, FCA's "Notice of Submission of Petition of Coordination," "results of [the] Initial Scheduling Conference," and FCA's Rule 26 disclosure. (Doc. 55-2 at 18, 21)

Plaintiff contends, "None of these time entries are excessive or unreasonable, and supervision by a partner is a customary practice." (Doc. 59 at 10) In addition, Plaintiff asserts that "review of Scheduling Conferences, Defendant's Answers to the Complaint and Defendant's Rule 26 Disclosures is well within the customary practice of partner." (*Id.*)

Notably, a review of the billing records submitted by Plaintiff indicates that Mr. Miklov was the only attorney who reviewed—or billed for reviewing—the answers to the complaint, FCA's initial disclosures under Rule 26, and the "Notice of Submission of Petition of Coordination." (Doc. 55-2 at 18, 21) These tasks did not duplicate any other lawyer's efforts, and review of the documents was reasonable for Plaintiff's prosecution of her claims. However, the reported 0.1 hour for review of the scheduling conference "results" appears duplicative and unnecessary where Alastair Hamblin, an associate at Knight Law Group, prepared for and attended the initial scheduling conference. (*See id.* at 55-2 at 21) Thus, the billing for Mr. Miklov will be reduced by 0.1 hour.

### iii. *Duplicative billing*

Defendant contends, "There are several instances of duplicative billing" by attorneys at Knight Law Group" that should be deducted from the fee award. (Doc. 58 at 10) Specifically, Defendant objects to the following entries:

> A. Morse (KLG) reviewed the file and drafted written discovery to FCA US including a letter enclosing the requests on 2/4/17 and 2/5/17 (5.2 hours and $1,820). M. Lumasag (KLG) reviewed the responses from FCA US and drafted a meet and confer letter on 4/7/17 and 4/12/17 (4.5 hours and $900). Then, on 11/29/17, D. Debavose (KLG) reviewed the file and drafted essentially the same set of written discovery requests under a federal court caption and cover letter, billing (3.4 hours and $935). D. Debavose then reviewed the responses from FCA US on 1/9/18 and 1/9/18 (5.0 hours and $962.50) and drafted a meet and confer letter to FCA US on 1/11/18 (1.5 hours and $412.50). FCA US' responses were essentially the same, again under a federal court caption, and the meet and confer letter did not vary substantially from the one that M. Lumasag drafted.
> ...
> K. Stephenson-Cheang (KLG) reviewed the First Amended Notice of VI twice, on 2/7/18 and on 2/9/18 and billed .1 ($37.50) to each. She also reviewed the Court's minute order regarding the motion to remand on 7/27/17 (.1 and $37.50) and the Court's order denying remand on 8/30/17 (.1 and $37.50) even though she had nothing to do with that process, either before or after the motion occurred.

(Doc. 58 at 10-11)

In response, Plaintiff argues that "[n]one of these time entries are excessive, duplicative, or unreasonable." (Doc. 59 at 10) According to Plaintiff, "Defendant's removal of this case to Federal

Court caused additional work to be performed, which in turn requires additional attorney hours." (*Id.*) Plaintiff also contends that even if FCA's discovery responses "were essentially the same," review was appropriate "incase (sic) additional responses were provided, or omitted." (*Id.*) Finally, she asserts the challenged time of Kristina Stephenson-Cheang was appropriate because, "[a]s an attorney work on the case, it [was] prudent of her to remain up to date on the case status." (*Id.*)

As Plaintiff observes, there is no *evidence* before the Court indicating the discovery requests prepared by Amy Morse and Deepak Devabose were identical, and Plaintiff was entitled to conduct discovery pursuant to the Federal Rules of Civil Procedure once the action was removed the District Court. Likewise, there is no showing the discovery responses were identical, or "essentially the same" as Defendant argues. Further, Ms. Stephenson-Cheang was the only individual to review the Court's minute order regarding the motion to remand and the Court's order denying the motion. Thus, because the defense has failed to support its assertions with evidence, the Court cannot determine these tasks were duplicative and will not be deducted from the fee award.

On the other hand, the billing records from Ms. Stephenson-Cheang indicate that, she billed twice for reviewing the First Amended Notice of Vehicle Inspection, on February 7 and February 9, 2018. (*See* Doc. 55-2 at 23) She also billed twice for reviewing the Court's "order Setting Mandatory Scheduling Conference," indicating she did so on both March 22 and April 5, 2017; and reviewing the Court's Scheduling Order on both May 15 and May 25, 2017. (*Id.* at 20, 21) Each entry indicates that Ms. Stephenson-Cheang spent 0.1 hour on the task. Due to the duplicative entries, the Court will deduct 0.3 hour from the fee award for Ms. Stephenson-Cheang.

### iv. *Clerical tasks*

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989). As a result, courts have eliminated clerical tasks from fee awards. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation).

Mr. Mikhov indicates that he spent 0.8 hour on July 22, 2019 to "[r]eview and audit billing"

prior to the filing of this motion. (Doc. 55-2 at 26) Due to the clerical nature of the task, the Court will reduce the 0.8 hour from the fee award for Mr. Mikhov.

### b. Work completed by Hackler Daghighian Martino & Novak, P.C.

As noted above, Knight Law Group associated Hackler Daghighian Martino & Novak, P.C. ("HDMN") into the case to serve as lead trial counsel. (Doc. 55-1 at 9) Defendant objects to the hours billed by HDMN as unreasonable, asserting the firm included duplicative tasks, clerical tasks, and overbilled with quarter-hour increments. (*Id.* at 11-12)

### i. *Duplicative tasks*

As Defendant observes, both Larry Castruita and Erik Schmitt billed for attending the pretrial conference held on November 26, 2018, though Mr. Castruita billed for 0.75 hour and Mr. Schmitt billed for 0.25 hour. (Doc. 55-3 at 8) Plaintiff contends the discrepancy in the billed time is because "Mr. Castruita was present for the entirety of the pretrial conference, while Mr. Schmitt was only present for a portion" (Doc. 59 at 10) However, there is no explanation as to why two attorneys were needed to represent Plaintiff at the conference and, based upon the fact that Mr. Schmitt only appeared for a portion of the conference, it appears two attorneys were not needed. Accordingly, the Court will deduct 0.25 hour from the fee award for Mr. Schmitt.

### ii. *Clerical tasks*

Review of the time sheets from HDMN reveals tasks that were purely clerical and should be excluded from the lodestar calculation. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Specifically, Andrea Plata, a paralegal, recorded 3.50 hours for tasks including printing and saving documents, calendaring deadlines, and reviewing the documents and discovery previously received by Knight Law Group to prepare a trial folder. (*See* Doc. 55-3 at 11)

As noted above, courts have discounted billing entries for "clerical tasks," which includes "filing, transcript, and document organization time." *Nadarajah*, 569 F.3d at 921; *see also Harris*, 132 F.3d at 985; *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying"). Thus, 3.5 hours expended by Ms. Plata on the clerical—and duplicative— tasks will be deducted from the lodestar.

### iii. *Unsupported and anticipated time*

Defendant argues the Court should not award the 12.5 hours of anticipated time included in the billing records for Larry Castruita related to reviewing the opposition, drafting the reply brief, and attending the hearing on the motion for fees and costs. (Doc. 58 at 9) Plaintiff contends the time should be awarded because preparation of the "Reply Brief is absolutely necessary and not templated work." (Doc. 59 at 11) According to Plaintiff, preparation of the Reply "require[d] case-specific facts, attention to detail, as well as a review of the case files." (*Id.*)

Significantly, Plaintiff failed to provide any evidence with the Reply related to the time actually spent reviewing the opposition and drafting the Reply brief, despite the numerous other exhibits attached to the declarations of Mr. Mikhov and Mr. Daghighian in reply. (*See* Doc. 59-1; Doc. 59-2) In addition, the motion was taken under submission without oral arguments. The Court declines to speculate as to the actual time spent by counsel in preparing the reply brief, as it is the fee applicant's burden to present evidence to support a motion. *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46. Accordingly, the lodestar calculation below reflects a reduction of 12.5 hours for Mr. Castruita.

### iv. Quarter-hour billing

HDMN billed in quarter-hour increments, which Defendant argues warrants a deduction in the fee award because "Plaintiff has not offered any evidence that such a billing practice is reasonable." (Doc. 58 at 12) In addition, Defendant observes that the "practice been criticized in the 9th Circuit and the Eastern District because it inflates time spent on the matter." (*Id.*, citing *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)

Sepehr Daghighian reports HDMN "bills in quarter-hour increments and has done so for years in both contingent cases, such as this one, and for hourly/fee-for-service matters performed for clients throughout the nation." (Doc. 59-2 at 2, Daghighian Decl. ¶ 3) According to Mr. Daghighian, HDMN's "clients understand and appreciate that billing in quarter hour increments properly accounts for my time spent working on their matters because it oftentimes saves them money." (*Id.*, ¶ 4) He reports that "in billing in quarter hour increments, [HDMN] only bill[s] for substantive time spent on the case; and not for the countless dozens of minor tasks that occur on a daily basis." (*Id.*) As a result, Mr. Daghighian contends "[the] billing records – including the billing records in this case – do not even begin to account for all of the time spent working on cases like this one." (*Id.*, ¶ 5) For example, he

contends "[c]ountless hours of oversight work were performed on the case," including the exchange of "many emails" that were not included in the billing records. (*Id.*; *see also* Doc. 59 at 14) Further, Mr. Daghighian asserts that his "office does not generally separately bill for minor inter-office conferences or discussions." (*Id.*)

Importantly, the argument presented by Mr. Daghighian that HDMN's quarter-hour billing encompasses undocumented time in this action related to oversight, interoffice communications, and discussions between co-counsel does not support the practice of quarter-hour billing. In general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary. *In re Mullins*, 84 F.3d 459, 467, 318 U.S. App. D.C. 19 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010). In addition, "many courts have ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) *citing, e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) (reducing the fee award where the attorneys "billed an inordinate amount of time for interoffice conferences"); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ("[c]laiming a disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate"). Thus, if such tasks had been included in HDMN's billing records, the time expended would have been deducted.

Moreover, as Defendant argues, courts have repeatedly criticized quarter-hour billing because it inflates time spent on the matter. *See, e.g., Welch*, 480 F.3d at 949 (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15 minute-increments); *Ekstrom v. Marquesa at Monarch Beach Homeowners Assoc.*, 2008 WL 4768861 (Cal. App. 4th. Nov. 3, 2008) (finding the trial court did not err in decreasing the fees requested by 40% where the attorneys billed in quarter-hour increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district

concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets, and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the reduction for quarter-hour billing. *Id.*

HDMN billed a quarter-hour for tasks such as preparation of the Magistrate Judge Consent form on November 25, 2018 and determining the deadline for dispositive motions on June 11, 2019. (Doc. 55-3 at 8-9) However, this appears excessive because limited preparation of the consent form was required, as Plaintiff used the form supplied by this Court. (*See* Doc. 41 at 1) This single page, check-the-box document could not possibly take more than a couple of minutes to complete. *See Calderon v. Astrue*, 2010 WL 4295583 at *5 (E.D. Cal. Oct. 22, 2010) (observing the consent form is a "simple, check-the-box type form[] that require[s] little time and effort to complete and file," and awarding only 0.1 hour for its completion). Similarly, the time reported by Mr. Schmitt to determine a deadline—which is itself a clerical task—appears excessive.

Further, the Court notes Mr. Schmitt billed 0.50 hour for appearing at the pre-trial conference on December 11, 2018. (Doc. 55-3 at 9) The Court's own records indicate the pre-trial conference began at 9:03:40 a.m. and ended at 9:24:10 a.m.—a total of just under 21 minutes—yet the practice of quarter-hour billing rounds the time up to 30 minutes. In addition, that conference addressed not only the matter now before the Court, but also the related actions of *Flores v. FCA US LLC*, Case No.1:17-cv-0427-JLT; *Durham v. FCA US LLC*, Case No. 2:17-cv-0596-JLT; *and Celestine v. FCA US LLC*, Case No. 2:17-cv-0597-JLT. A significant portion of the conference with counsel was related to *Celestine* and *Durham*, and the limited discussions related to the matter now before the Court occurred from 9:14 to 9:18a.m. and 9:22 to 9:24 a.m. Thus, the 0.50 billed in this action for Mr. Schmitt's appearance at the pre-trial conference is excessive.

The Court's review of the billing records strongly suggests the reported time was inflated by the quarter-hour billing minimum. Consequently, the remaining time reported by the attorneys HDMN is reduced by 20% for purposes of the lodestar calculation, resulting in a compensable total of

0.2 hour for Sepher Daghighian, 13.8 hours for Larry Castruita, and 1.2 hours for Erik Schmitt. The Court finds this time reasonable for the tasks undertaken by each of the attorneys.

## 2. Hourly rates

The Supreme Court determined attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). The fee applicant has the burden to establish the rates are reasonable with the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly).

The court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiff presents no evidence that local counsel was either unwilling or unable to prosecute her claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Fresno Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at *5-6.

The attorneys at Knight Law Group seek hourly rates ranging from $200 to $500, while attorneys at HDMN seek hourly rates ranging from $250 to $550. (Doc. 69-2 at 32; Doc. 55-3 at 8) In support of counsel's lodestar calculation and the fee request based upon these hourly rates, Plaintiff

14

requests the Court review:

> (i) the hourly rates set forth of in the declarations filed concurrently herewith (SM Dec., ¶¶ 18-27; SD Dec., ¶¶ 3-6), (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 30), (iii) over three dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (SM Dec., ¶¶ 31-42, Exs. E-P), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (SD Dec., ¶ 8, Ex. B, at pp. 42-45.)

(Doc. 55-1 at 13) However, this evidence does not address the local forum or assist the Court in its analysis. For example, while Mr. Mikhov reports "the hourly rates of other attorneys in the [state of] California who work in the area of lemon law and consumer law," he does not identify attorneys practicing in the Eastern District. (*See* Doc. 55-2 at 8-9, ¶ 30)

Though Mr. Mikhov identifies cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries—including Merced County and Tulare County—many of the courts' orders offer no analysis regarding whether the hourly rates were reasonable for local counsel. (*See, e.g.* Doc. 55-2 at 100-101, 105-106, 110-111) Without such analysis, the Court is unable to determine whether the plaintiffs presented evidence that local counsel was either unwilling to take their cases or unable to do so, such that the higher hourly rate was warranted. Given the lack of such evidence here, the hourly rates will be reduced for purposes of calculating the lodestar. *See, Gordillo*, 2014 WL 2801243 at *5-6; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community). Indeed, the requested hourly rates were from Knight Law Group were rejected in *Metzger vs. FCA US LLC* (Fresno County Superior Court Case No. 16CECG02922), which is attached as Exhibit H to the motion; and Mr. Mikhov acknowledges the court only "awarded 85% of the requested lodestar fees." (Doc. 55-2 at 117; *see also* Doc. 55-2 at 10-11, Mikhov Decl. ¶ 34)

Previously, this Court reviewed the billing rates for the Fresno Division of the Eastern District and determined "the current reasonable range of attorneys' fees for cases litigated in the Eastern District of California's Fresno Division is between $250 and $400 per hour." *Roach v. Tate Publ'g & Enter.*, 2017 WL 5070264 at *9 (E.D. Cal. Nov. 3, 2017) (internal quotation marks, citation omitted); *see also Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014) ("hourly rates generally

accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience").  With this range of hourly rates, "attorneys with experience of twenty or more years of experience are awarded $350 to 400 per hour." *Id.*, 2017 WL 5070264 at*9.  For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester,* 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo*, 2014 WL 2801243. With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.

The Court notes that Diane Hernandez, who seeks the hourly rate of $375, "was admitted to practice in California in 1997." (Doc. 55-2 at 8, Mikhov Decl. ¶ 27)  In addition, Mr. Mikhov reports that Ms. Hernandez "works frequently in lemon law cases." (*Id.*)  Based upon her significant experience, the Court finds the requested hourly rate is appropriate. *See Roach,* 2017 WL 5070264 at *9; *see also Silvester*, 2014 WL 7239371 at *4.

The hourly rate for Mr. Mikhov and Russell Higgins, who were admitted to the bar in 2003, will be reduced to $300. *See Trujillo v. Singh,* 2017 WL 1831941 (E.D. Cal. May 8, 2017) (awarding an hourly rate of $300 per hour to counsel with 15 years of experience, finding this amount was appropriate for the Fresno area); *Gordillo*, 2014 WL 2801243 (awarding an hourly rate of $300 to an attorney who had "represented thousands of California consumers with Song–Beverly claims in the last fourteen years").  The hourly rate for Sepehr Daghighian, who began practicing law in late 2005, will be adjusted to $275.  The hourly rate for Kristina Stephenson-Cheang, who began practicing law in 2008, will be adjusted to $250.  Further, the rates for Alastair Hamblin[1], Amy Morse, and Larry Casruita—who began practicing law between 2011 and 2013—will be adjusted to $225.  Finally, the hourly rates for attorneys who have practiced law for less than five years—including Christopher

---

[1] Plaintiff did not provide any information regarding when Alastair Hamblin began practicing law, but rather only reported that he "graduated from Southwestern Law School in 2007" and began working at Knight Law Group in 2016. (Doc. 55-2 at 7, Mikhov Decl. ¶ 24)  However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Alastair Hamblin as February 2012, as represented on the website of the State Bar of California. *See id.*; Fed. R. Evid. 201(b).

Urner, Deepak Devabose, Erik Schmitt, Michael Morris-Nussbaum[2], and Michelle Lumasag— are adjusted to $175.

Based upon the prior survey of the attorney fees in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable. *See Roach,* 2017 WL 5070264 at *9; *Silvester,* 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 3. Lodestar calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). With the time and rate adjustments set forth above, the lodestar in this action is **$26,387.50**:

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($23,017.50)** | Alastair Hamblin | 10.7 | $225 | $2,407.50 |
| | Amy Morse | 8.6 | $225 | $1,935.00 |
| | Christopher J. Urner | 8.5 | $175 | $1,487.50 |
| | Deepak Devabose | 9.7 | $175 | $1,697.50 |
| | Diane Hernandez | 13.0 | $375 | $4,875.00 |
| | Kristina Stephenson-Cheang | 15.8 | $250 | $3,950.00 |
| | Michelle Lumasag | 4.5 | $175 | $787.50 |
| | Michael Morris-Nussbaum | 5.3 | $175 | $927.50 |
| | Russell Higgins | 12.3 | $300 | $3,690.00 |
| | Steve Mikhov | 4.2 | $300 | $1,260.00 |
| | | | | |
| **Hackler, Daghighian, Martino & Novack ($3,370.00)** | Sepehr Daghighian | 0.2 | $275 | $55.00 |
| | Larry Castruita | 13.8 | $225 | $3,105.00 |
| | Erik Schmitt | 1.2 | $175 | $210.00 |
| | Andrea Plata | 0.0 | N/A | |
| | | | | |
| **TOTAL** | | | | **$26,387.50** |

### 4. Application of a multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality

---

[2] For the reasons set forth in Footnote 1, the Court takes judicial notice of the admission date of Michael Morris-Nussbaum as December 1, 2017, as represented on the website of the State Bar of California.

of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award").

Significantly, however, this case did not present novel or difficult questions of law or fact. Indeed, the issues related to the TIPM were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK. In addition, the issues presented in this action were not complex. *See Steel v. GMC,* 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"). Further, as Defendant observes, the facts were not significantly disputed and little discovery was required. It does not appear that significant skill was needed to pursue Plaintiff's claims. Furthermore, there is no evidence that "the nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiff's counsel—13 attorneys in total—expended less than 110 hours of work on this action over the course of three years. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues to be resolved were minimal. Accordingly, the Court finds the lodestar amount of $**26,387.50** is reasonable and declines to award a multiplier.

## B. Costs to be Awarded

Plaintiff requests costs in the amount of $11,760.31. (Doc. 55-1 at 2; *see also* Doc. 54) According to Plaintiff, all costs should be awarded because "[u]nder the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount costs <u>and expenses</u>." (Doc. 55-1 at 19, emphasis in original)

In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in

diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs a request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citing 10 Wright & Miller § 2666, at 203).

### 1. Personal service

Pursuant to Local Rule 292(f)(2), a party may recover "fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same

service by the Marshal." Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service. 20 C.F.R. § 0.114(a). Requests for costs that exceed these amounts may be reduced to align with the amount authorized by Section 0.114(a). *See Yeager v. Bowlin,* 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Plaintiff seeks costs for service of the summons to FCA in the amount of $37.95, service upon Razzari Dodge in the amount of $59.65, and service of several deposition subpoenas in the amount of $39.95. (Doc. 54 at 3; Doc. 55-3 at 30) These fees are within the amount authorized under Section 0.114(a) and will be allowed. However, Plaintiff also seeks $119.90 for service of a deposition subpoena to Razzari Dodge's SA, Adrian Diaz. (Doc. 54 at 3) According to Plaintiff's invoices, the additional charges are due to "priority" service and an area surcharge. (*Compare* Doc. 55-2 at 44 *with* Doc. 55-2 at 43, 45-48) Plaintiff offers no explanation as to why "priority" service of this subpoena was necessary, and there is no evidence regarding the amount of time required for service of the subpoena to be effected. Accordingly, the Court reduces the service fee by $54.90 to the $65.00 contemplated by statute.

### 2.     Overnight courier

Plaintiff seeks $10.20 in costs for service of unidentified documents sent by an overnight courier. (Doc. 54 at 4; Doc. 55-2 at 84-85) However, "[c]ommunication charges like courier [and] mail… costs cannot be taxed" under Section 1920. *Nat'l Union Fire Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 2014 WL 3529980 at *1 (E.D. Cal. July 16, 2014) (citing *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995); *see also Cooper v. United Air Lines, Inc.,* 2015 WL 3548572 at *3(N.D. Cal. June 5, 2015) ("Overnight delivery and courier charges are not one of the enumerated categories of recoverable costs in § 1920"); *Bonilla v. KDH Backhoe Serv*., 2007 WL 39307 at *3 (N.D. Cal. Jan. 4, 2007) (finding "overnight delivery and messenger services" "fall outside of the[] parameters" of Section 1920). Accordingly, Plaintiff's request for these costs is denied, and the cost award will be reduced by $10.20.

### 3.     CourtCall

Plaintiff seeks $86.00 for the appearance of Mr. Higgins via CourtCall at a conference on November 7, 2016. (Doc. 54 at 4; Doc. 55-2 at 83) Previously, this Court determined the costs of

CourtCall "are outside the scope of § 1920." *Graff v. City of Tehachapi*, 2016 WL 4944005 at *5 (E.D. Cal. Sept. 16, 2016);   Because telephonic appearances are not authorized by Section 1920, the Court reduces the cost award by $86.00.

### 4.     Mileage

The itemization of costs indicates that Plaintiff seeks costs for travel by counsel, including mileage to and from several depositions.  (Doc. 54 at 3-4)  In total, Plaintiff seeks $201.37 in mileage for Diane Hernandez, $11.44 in mileage for Christopher Urner, and $12.54 in mileage for Michael Morris-Nussbaum.  (*Id.*)

Pursuant to Local Rule 292(f)(8), mileage for *witnesses*, not attorneys, may be taxed as costs. Likewise, other courts have determined attorneys are not entitled to mileage under Section 1920.  *See, e.g.*, *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.,* 2007 WL 1106116 at *2 (E.D. Ark. Apr. 12, 2007) (declining "to award travel and mileage costs for his attorney as such costs are not found in § 1920"); *Horina v. City of Granite City*, 2007 WL 489212 at *2 (S.D. Ill. Feb. 9, 2007) ("mileage expenses of attorneys are not recoverable costs under 28 U.S.C. § 1920").  As a result, Plaintiff is not entitled to mileage for their attorneys to travel to the depositions.  *See Atain Specialty Ins. Co. v. Sierra Pacific Mgmt. Co.,* 2016 WL 7034887 at *2 (E.D. Cal. Dec. 2, 2016) (finding the plaintiffs were "not entitled to the … mileage fee for their attorney's travel").  Therefore, Plaintiff's request for costs will be reduced by $225.35.

### 5.     Deposition transcripts

Section 1920(2) provides that "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed as costs.  Similarly, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter fees."  Thus, if found to be necessary to the litigation of a case, the costs of transcripts of depositions taken in a case may be taxed as costs under Rule 54 and Section 1920. *See Aflex Corp. v. Underwriters Laboratories*, 914 F.2d 175, 176-78 (9th Cir. 1990) (finding the "taxing of costs for copies of depositions" was proper).

On the other hand, costs incurred related to deposition transcripts that are "merely for the convenience of counsel" are not permitted under Section 1920.  *Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 1757217 at *7 (E.D. Cal. Apr. 30, 2014).  As a result, costs for expediting transcripts, condensing

the transcripts, and litigation support packages are not permitted. *See Daniel v. Ford Motor Co.,* 2018 WL 1960653 at *4 (E.D. Cal. Apr. 26, 2018) ("the court will not allow costs for rough drafts, expedited fees, CD litigation packages, … 'e-transcripts,' 'digital transcripts,' or 'condensed transcripts,' which appear to have been provided for the convenience of the attorneys"); *see also Hesterberg v. United States,* 75 F.Supp.3d 1220, 1225 (N.D. Cal. 2014) (noting it was "well established" in the district that "expedited delivery charges for deposition transcripts are not allowable")

Plaintiff has not made any showing that the copies for Mr. Hernandez, the litigation support package, and associated handling fee were necessary for appear to have been for the convenience of counsel, and recovery is not permitted under Section 1982. *See Oyarzo*, 2014 WL 1757217 at *7; *Daniel,* 2018 WL 1960653 at *4. Accordingly, the Court will deduct $103.70 from the requested cost award. (*See* Doc. 54 at 3; Doc. 55-2 at 54)

### 6. Miscellaneous deposition costs

The requested costs related to depositions also include parking ($39.00), conference room rental ($180.00), and meals ($12.02). (*See* Doc. 54 at 3-4; Doc. 55-2 at 54) Such costs are not permitted under Section 1920. *See Self v. FCA US LLC*, 2019 WL 1994459 at*15 (E.D. Cal. May 6, 2019) (finding costs for "conference rooms, airport parking, gasoline, rental cars, meals, and lodging... are not permitted under section 1920"). Accordingly, the Court will deduct $231.02 from the cost award.

### 7. Experts

Plaintiff seeks $8,681.69 related to expert witness, including the deposition and vehicle inspection report of Thomas Lepper and deposition preparation by Barbara Luna. (Doc. 54 at 4)

Significantly, the Ninth Circuit determined a court must apply federal law to a request for costs in a diversity action. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160 (9th Cir. 1995). The Court in *Aceves* awarded the prevailing party costs, including expert witness fees, under section 998(c) of the California Code of Civil Procedure. *Id.*, 68 F.3d at 1167. The Ninth Circuit found the district court erred in applying California law because "reimbursement of witness fees is an issue of trial procedure" and in a diversity action, "federal law controls the procedure by which the district court oversaw the litigation." *Id.*, citing *Hanna v. Plumer*, 380 U.S. 460, 463 (1965). Accordingly, here, the Court must apply federal law to determine whether Plaintiff is entitled to recover expert fees as costs.

Under Section 1920, only compensation for "court appointed experts" and witness fees is permitted. *See* 28 U.S.C. § 1920. Neither of Plaintiff's witnesses were appointed by the Court. As such, Plaintiff is not entitled to recover the expert fees under Section 1920. On the other hand, 28 U.S.C. § 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance," including testimony at a deposition. Thus, a prevailing party may be awarded the witness fee under Section 1821 for an expert who testifies at a deposition. *See Ruff v. County of Kings*, 700 F.Supp.2d 1245, 1247-48 (E.D. Cal. 2010). Consequently, Plaintiff is entitled to $40 in costs for the deposition of Mr. Lepper.

### 8. Mediation costs

Plaintiff seeks $51.02 related to a mediation with Maureen Summers in August 2016, which addressed 98 cases against FCA. (Doc. 54 at 4; Doc. 55-2 at 81) As Defendant observes, mediation costs "are not within the scope of either Section 1920 or Local Rule 292(f)." (*See* Doc. 57 at 8) Thus, the cost award will be reduced by $51.02.

### 9. Total costs to be awarded

With the deductions set forth above, Plaintiff is entitled to $2,356.43 in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920.

## V. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion for fees is **GRANTED** in the modified amount of $**26,387.50**; and

2. Plaintiff's motion for costs is **GRANTED** in the amount of $**2,356.43**.


IT IS SO ORDERED.

Dated: __**September 9, 2019**__         _____**/s/ Jennifer L. Thurston**
                                                                      UNITED STATES MAGISTRATE JUDGE